**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

September 20, 2024

**By ECF**
The Honorable Laura T. Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

**Re: *United States v. Luis DeJesus*, 24 Cr. 59 (LTS)**

Dear Judge Swain:

After having been convicted of his second firearms offense and his third narcotics offense, the defendant will appear for sentencing before Your Honor on September 26, 2024. For the reasons stated below, the Government respectfully submits that an above-Guidelines sentence of 84 months' imprisonment followed by three years of supervised release would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing in this case.

## I. Factual Background

The evening of October 15, 2023 on Anderson Avenue was punctuated twice: first by voices and second by gunfire. At approximately 10:26 p.m., a witness exited her home and confronted an agitated man who was later identified as DeJesus, on the sidewalk outside her building. The interaction was captured by surveillance video. After having been confronted, DeJesus told the witness, "they're fucking with my money." The witness responded, in sum and substance, that there was enough money to go around. DeJesus replied, "fuck that, I'm out here. I'm going to stay out here." DeJesus then began walking northbound on Anderson Avenue when gunfire broke out.

At the outset of the shootout, DeJesus was the target. The gunfire originated from the lobby of 1080 Anderson Avenue where four men were shooting down the street in DeJesus's direction. DeJesus returned fire as he ran and then took up a firing position behind a parked car where he continued to shoot back. A total of **18 rounds** were recovered from the scene, including seven 9mm shell casings from DeJesus's firing position.[1] Responding officers encountered DeJesus—who had suffered a gunshot wound to the leg—at the scene. DeJesus identified himself to law enforcement by his true name and was transported to the hospital for medical treatment.

[1] The Government will provide the Court with a video of the shooting in advance of sentencing.

Approximately one month later, DeJesus was arrested at his home in connection with the shooting. At the time of his arrest, law enforcement officers executed a search warrant at his residence. When law enforcement officers arrived to execute the warrant, DeJesus tried to prevent their entrance. From outside the door, the officers could hear water running. Simultaneously, officers stationed on the perimeter saw an item fly out of the window of DeJesus's apartment. The perimeter officers went to an area below the apartment window and found a Smith & Wesson 9mm pistol loaded with 14 rounds of ammunition. A belly holster was recovered with the pistol. Inside the apartment, the searching officers found the bathroom sink and the toilet running. There was crack cocaine in both the sink and toilet. In addition, the searching officers found:

- an automated cash counting machine;
- $15,702 total cash;
- 15 small ziploc baggies;
- suspected crack amounting to 21.5 grams;
- scale with suspected drug residue;
- one box of ammunition containing eleven 9mm rounds;
- one round of .300 caliber ammunition;
- an additional handgun holster;
- bulletproof vest; and
- clothing and sneakers matching that worn by DeJesus during the shooting.

## II.    The Plea and Guidelines Calculation

On May 20, 2024, the defendant pleaded guilty to Counts One and Two of a superseding information. The offense level on Count One was 18 which included a cross-reference enhancement for the use of ammunition in connection with reckless endangerment. The offense level on Count Two was 24 which included enhancements for (i) drug weight pursuant to U.S.S.G. §§ 2D1.1(a)(5) and (c)(10); (ii) the use of a firearm in connection with drug trafficking pursuant to § 2D1.1(b)(1); and (iii) creating a substantial risk of death or serious bodily injury in connection with the risk DeJesus created by throwing a loaded gun out of a seventeenth-story window during the search warrant, pursuant to §§ 3C1.2. After grouping analysis and a reduction for acceptance of responsibility, the offense level was calculated to be 22.

Due to the age of his convictions, the defendant has zero criminal history points. However, the parties agreed that the Guidelines understated the seriousness of the defendant's criminal history and the likelihood of recidivism and stipulated to an upward departure to criminal history category II. At offense level 22 and criminal history category II, the stipulated guidelines range was 46 to 57 months imprisonment.

In his sentencing submission, the defendant has asked the Court for a significantly below-Guidelines sentence of 24-months' imprisonment. The Probation Department has recommended a Guidelines sentence of 46 months' imprisonment. Due to the seriousness of the offense, the defendant's conduct at the time of the search, and the defendant's criminal history, the Government is requesting an above-Guidelines sentence.

## III. Discussion

### A. An Above-Guidelines Sentence of Imprisonment is Necessary and Appropriate

The Government respectfully submits that the statutory sentencing factors set forth in Title 18, United States Code, Section 3553(a) weigh in favor of an 84-month term of imprisonment, to be followed by three years of supervised release. The factors particularly applicable here include the need for the sentence to reflect the nature and seriousness of the offense, to afford adequate deterrence to this defendant and others, to protect the public from further crimes of the defendant, and to promote respect for the law. 18 U.S.C. § 3553(a)(2)(A)-(C).

The defendant has committed serious crimes that demand a serious sentence. DeJesus and his family have resided on Anderson Avenue at various points in his life since he was a child. (Def. Sub. at 3). This is his community. But that could not stop him from carrying a loaded gun on the streets and engaging in behavior that evinced a complete lack of regard for human life. On October 15, he recklessly engaged in a shootout along a residential street at 10:30 p.m. on a Sunday night. His conduct is exactly the type of conduct that destroys communities and terrorizes residents. Every person has a right to feel safe in their home, on their street, and in their neighborhood. No one should have to wonder if the sounds they hear outside are gunfire or be faced with the terrifying experience of having to flee from bullets. The defendant, and others like him, rip away any sense of safety innocent residents might feel. He and others contribute directly to the same cycle of suffering, fear, and despair that many have themselves confronted. In this case, the toll on the community is not hypothetical. The defendant and those with whom he engaged in this shootout turned Anderson Avenue into a battlefield, leaving behind spent shell casings, broken glass, and bullet holes. Photographs from the scene, an example of which is copied below, show bullet holes in the windows of vehicles parked in front of homes. Surveillance from the scene shows an innocent bystander ducking into a bodega as gunfire breaks out around her. It is nothing short of a miracle that the only person injured that evening was the defendant.



Although defense counsel attempts to paint the defendant's conduct as the result of a single drunken night, the reality is quite different. The reality is that, in October 2023, the defendant was actively engaged in drug dealing and well prepared for a gunfight. The chain of events that led to DeJesus's arrest began when he got into a loud and public argument about money. Within minutes of his lamenting that "they're fucking with my money," several men started shooting in his direction. He returned fire with a 9mm pistol. Days later, police knocked on his door to execute a search warrant. He responded by (i) throwing a second loaded gun and belly holster[2] out of his 17th story window and (ii) attempting to flush narcotics down the toilet. During the search, law enforcement officers recovered, among other things, ammunition, a hip holster, and a bullet proof vest sewn into a t-shirt. The evidence makes clear that the night of October 15, 2023 was not an aberration. The shooting wasn't a momentary lapse in judgment on a night clouded by alcohol. It was instead exactly the type of night for which the defendant—a man who owned two guns, ammunition, a bullet proof vest, and two holsters—prepared.

At the time he engaged in the shootout, the defendant was also engaged in drug dealing. DeJesus acknowledged this during his plea allocution when he admitted that he intended to sell the narcotics in his possession. Here to, the defendant was prepared to endanger his community by feeding the cycle of addition, desperation, and death, for little more than personal profit. In his home, law enforcement officers recovered several items that indicated the defendant was engaged in drug distribution including: (i) large quantity of cash; (ii) a scale; (iii) a money counter; and (iv) packaging material (e.g. baggies and small rubber bands). The defendant responded to the threat of arrest by destroying drug evidence when he flushed narcotics down the toilet and tried to destroy drugs by running water over them in the sink. In short, the defendant directly committed acts of violence in the same community he was already helping to destroy with narcotics.

This is not the first time the defendant has pulled the trigger of a gun or sold drugs. His criminal history tells the story of a man who has engaged in sporadic violence and drug dealing since he was a teenager. At age 19, he was first convicted of a narcotics offense in connection with hand-to-hand sales. (PSR ¶ 47). The same year, he was convicted of a firearms offense after he

[2] A belly holster is a handgun holster that wraps around the torso in order to allow the wearer to carry a firearm concealed under a shirt.

was "observed shooting a loaded weapon, a .9mm Uzi, towards unknown individuals." (PSR ¶ 48). In a similar refrain, at the time of his arrest in that case, he told police, "I shot at them because they shot me first." *Id.* At age 23, he was again arrested in connection with a hand-to-hand narcotics sale. (PSR ¶ 50). The same year, he participated in a violent assault during which the victim was stabbed repeatedly. (PSR ¶ 51). Three years later, the defendant was convicted of his second-DWI offense. (PSR ¶ 52). The defendant is now 39. He is an adult, but he is continuing to commit the same offenses that he committed when he was a young man. Arrests, convictions, and prison sentences have done little to deter him from continued, escalating criminal conduct. A serious term of incarceration is now necessary to provide specific deterrence and protect the public from the defendant's future crimes.

The defendant's criminal conduct cannot be taken lightly. At a time when gun violence is so prevalent, the need for general deterrence is striking. An above-Guidelines sentence of incarceration would send a message to the defendant and others like him that this type of conduct will not be tolerated.

**IV. Conclusion**

For the reasons set forth above, the Government respectfully requests that the Court impose an above-Guidelines sentence of 84 months' imprisonment, as such a sentence would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

By: ______________________
Ashley C. Nicolas
Assistant United States Attorney
(212) 637-2467

cc: Grainne O'Neill, Esq. (by ECF)